PATON *v.* PATON.

1. PARENT AND CHILD—CUSTODY OF CHILDREN—NATURAL RIGHTS—COURTS.

The natural right of parents to the custody of their children should be recognized by courts, and the parents should not be deprived of such custody without extremely good cause.

2. SAME—NATURAL RIGHT OF CUSTODY OF CHILDREN—STATUTES.

The natural right of parents to the custody of their children is recognized by the statutory law of this State (CL 1948, § 722-.541).

3. SAME—NATURAL RIGHT OF CUSTODY—COURTS—BEST INTERESTS OF CHILDREN.

Parents are not permitted to exercise their natural right to the custody of their children in a manner which would violate the rights of their children, and it is only when this is done may courts interfere in order to protect the best interests of the children (CL 1948, § 722.541).

4. SAME—CUSTODY OF CHILD—STATUTES—DISCRETION OF COURT.

The recommendation of the legislature that custody of a child under the age of 12 years be given to the mother in case of separation of the parents is not to be lightly disregarded, even though such recommendation is subject to the discretionary power of a chancery court to safeguard the best interests of the child in a proper case (CL 1948, § 722.541).

5. SAME—CUSTODY OF CHILD—FITNESS OF MOTHER—STATUTES.

The chancery court may not ignore provisions of a statute recommending that in the event of separation of parents that

---

REFERENCES FOR POINTS IN HEADNOTES

[1-5] 17A Am Jur, Divorce and Separation §§ 818, 819.
    39 Am Jur, Parent and Child §§ 15, 16, 20.
[6] 17A Am Jur, Divorce and Separation § 840.
    Remarriage of parent as ground for modification of divorce decree as to custody of child.  43 ALR2d 363.
[7] 17A Am Jur, Divorce and Separation § 837 *et seq.*

custody of a child under 12 years of age be given the mother by giving custody of such child to others, except where the mother is not of good moral character or where conditions exist in her home which would make it unfit for the child (CL 1948, § 722.541).

6. DIVORCE—CUSTODY OF CHILD—EVIDENCE.

Evidence presented in suit for divorce on matter of custody of 4-year-old daughter *held*, to show that since remarriage, the mother has established a home in favorable surroundings and, therefore, without further delay is entitled to her daughter's custody notwithstanding the child has been well cared for in the home of the paternal grandparents (CL 1948, § 722.541).

7. SAME—CHANGE OF CUSTODY—SUBSEQUENT REVIEW AS TO ADJUSTMENT OF CHILD.

Order removing 4-year-old daughter of divorced parents from custody of paternal grandparents and transferring her to the mother's custody is subject to review by the circuit judge 6 months hereafter as to the adjustment of the child in the new home (CL 1948, § 722.541).

BLACK, J., dissenting.

Appeal from Washtenaw; Breakey, Jr. (James R.), J. Submitted January 20, 1961. (Docket No. 69, Calendar No. 48,455.) Decided April 26, 1961.

Bill by William A. Paton, Jr., against Diana Doyle Paton for divorce on grounds of extreme and repeated cruelty. Decree for plaintiff with custody of minor child vested temporarily in the friend of the court and with actual physical custody in paternal grandparents. Defendant appeals. On remand for further testimony in respect to child custody, recommendation made that no present change be ordered. Recommendation approved. Reversed and remanded.

*Kennedy & Dobson,* for plaintiff.

*Anderson, Carr & Street* (*Cassius E. Street, Jr.,* of counsel), for defendant.

Black, J. (*dissenting*). This appeal, taken by the defendant mother from a decree of divorce entered September 8, 1959, has by our order of October 14, 1960, and subsequent proceedings resolved its sole thrust into a custodial question: one of ways and means to effectuate the best interests of now 4-year-old Victoria Jane Paton.

When the appeal came to submission during our October term, it developed that each of the respective parties had remarried. Our said order ensued. The order directed remand of the case "for the taking of further testimony as to conditions existing since last hearing,  *  *  *  touching on where and in whose custody the best interests of the minor child will be subserved and for recommendations thereon from the trial judge."

In pursuance of that order the chancellor proceeded to conduct an extensive hearing. Both parties were afforded free right of testimonial presentation touching the stated question. The chancellor's recommendations, appearing in the final pages of the transcript returned here, may fairly be summarized as follows:

The chancellor suggests that it is now in order "for the mother to have the child with her for certain defined periods of time, so that the relationship of this mother and child may be better determined, especially as to any effect that it may have upon the child." He finds that "the mother appears now  *  *  *  to be much more stabilized" than before (the chancellor refers here to the originally found fact that the mother was suffering certain mental disturbances), and concludes by saying that he "does not recommend a change of custody at this time, but recommends that gradually the child's relationship with its mother be reflected by further court determination as to custody," and that "any shift in possession of the child, even for short periods of time,

should be guided by the consideration of the possible effect of any sudden change upon the child."

The background of these recommendations appears in the appendix on appeal, filed April 1, 1960. For general understanding of the case such background is submitted as follows:

The husband is an American citizen. From separation until recent remarriage he resided with his parents in Ann Arbor. The wife is a subject of Great Britain.* The parties were married in England September 10, 1955, and commenced Lansing life later that year. Shortly after they arrived in Lansing the wife commenced suffering from a skin irritation "which apparently was not explainable on a purely physical basis." The relationship of the parties seems to have deteriorated steadily as this trouble developed. The child was born March 7, 1957. In the fall of 1957, upon her physician's advice, the mother commenced taking psychiatric treatment. The psychiatrist, a medical doctor, deposed in June of 1958 that the mother was "a mentally ill person" and that "with continued treatment the prognosis for her improvement and recovery is good."

In the meantime, and on October 12, 1957, the child by agreement of the parties was turned over to the custody of her paternal grandparents. There she has remained, with excellent environmental care, until the present time.

According to the mother's testimony the psychiatrist advised, in the spring of 1958, that she was then in condition "to care for the child." She charges that, as the parties were planning to move the child

---

* Mrs. Paton (now Mrs. Cochran by marriage March 19, 1960) testified during the course of such recent hearing that she has filed due application for American citizenship and that she expects her final papers in this year 1961. She and her present husband are living in Flushing, New York. They plan to move to East Lansing, where they have rented an apartment, as soon as Mr. Cochran completes his plans for entry into business there. He is presently employed by the government in New York City.

from Ann Arbor to their home in Lansing, the "plaintiff surreptitiously removed both cars from the family home, established residence in Ann Arbor with his parents and filed suit for divorce, seeking custody of the child."

The father's bill for divorce was filed June 23, 1958. Charges and countercharges followed. July 17, 1958, the chancellor ordered that temporary custody of the child be placed with the "Washtenaw Friend of Court" with the "care and supervision of the child being given to the paternal grandparents." November 14, 1958, the psychiatrist having allegedly given her "a clear bill of health," the mother petitioned for temporary custody. A hearing on this petition was held. The petition was denied. The chancellor's order, retaining custody with the friend of court and grandparents as above, was incorporated substantially in the appealed decree.

The presented issue has been carefully and vigorously briefed. The mother, apparently on her way to generally better health, wants a peremptory order for custody in her favor. The father and the paternal grandparents resist with vigor and rely upon the chancellor's original opinion and his recommendations as brought here.

My conclusion is that no ground has been shown for disturbing the original decretal provision. Neither is there good reason for disregard or modification of that which has recently been recommended to us. The child's welfare is paramount. She knows no home or care other than that which able and affectionate grandparents have provided and she was placed in that home by agreement and for good reason. There she should stay, subject to more and more temporary visits and stays with her mother, until an order as now sought is more fully justified. Such an order would take her to another State, beyond the jurisdiction of our courts (see *Herbstman*

v. *Shiftan,* 363 Mich 64). It should be withheld until it is made to appear—to the chancellor's satisfaction—that the mother and her new husband have according to their declared intention moved to Michigan.

Judge Breakey has not disregarded the rights of the mother. He would simply guard the welfare of the child, on a sort of month-to-month basis until trials and other developments prove out more favorably, and indicates intention of transferring custody to the mother when such transfer will prove best for the child. This is good judgment, deserving of approbation.

The complete record calls for approval of the chancellor's recommendations. The case should be remanded for entry of such order or orders, in furtherance of such recommendations, as to the chancellor may appear just and meet. It hardly need be added that either party may apply for leave to review subsequent orders.

KAVANAGH, J. Most of the facts with reference to this case are set forth in the opinion of Mr. Justice BLACK. The additional facts necessary to its disposition are found from an examination of the complete record in the original trial and the record on rehearing.

The testimony discloses the mother of the child has remarried and has established a proper and fit home at 233 Orchard street, East Lansing, Michigan, in which to raise her child. Her love for the child cannot be questioned. The sacrifices she and her new husband have made, including moving to Michigan in order to have the child with them, indicate she is a proper and fit person to have custody of her daughter. While Judge Breakey has indicated an intention of transferring custody of the child back to the mother at some future date, from this record we can-

not justify postponement of the time when the child and mother can be reunited. We conclude from an examination of all the evidence that the chancellor erred in postponing the amendment of the original decree as to the custody provision.

Courts should recognize that parents have the natural right to the custody of their children. This natural right of the parents is entitled to great consideration and the courts should not deprive them of custody of their children without extremely good cause. Such natural right is recognized by the statutory law in this State. Like any other right, whether it be the right to drive an automobile or the right to own property, there accompanies it the corresponding duty to so exercise that right as not to interfere with the rights of others. We are not permitted to drive our automobile without regulation or to use our property so as to injure others. Parents are not permitted to exercise their rights in a manner which would violate the rights of their children, and when this is done, and only then, do the courts have a right to interfere with the custody, control, and upbringing of a child and, as is often said, protect "the best interests of the child." See *Herbstman* v. *Shiftan,* 363 Mich 64, and cases therein cited.

Justice KELLY, in *Lair* v. *Lair,* 355 Mich 10, reviews the law in the State of Michigan with reference to the situation where there is a separation of husband and wife and the court is faced with the proposition of providing for the care and custody of the minor children. Justice KELLY quotes from the statute (CL 1948, § 722.541 [Stat Ann 1957 Rev § 25-.311]) as follows (p 12):

" 'That in case of the separation of husband and wife having minor children, the mother of said children shall be entitled to the care and custody of all such children under the age of 12 years, and the

father of such children shall be entitled to the care and custody of all such children of the age of 12 years or over: * * * And provided further, That nothing in this act shall prevent any court of competent jurisdiction from making and enforcing any such order or orders as it may deem just and proper as to the care and custody of such minor children in the same manner and with like effect as it could if this act had not been passed.' "

While it is to be noted that this section of the statute is not compulsory but is subject to the discretionary power of the chancery court to safeguard the best interests of the child in a proper case, the recommendations of the legislature in that regard are not to be lightly disregarded. *Fuller* v. *Fuller,* 249 Mich 19; *Lair* v. *Lair,* 355 Mich 10.

It is to be noted that the construction of this custody statute has been previously before this Court. The cases are collected in *Eichholtz* v. *Eichholtz,* 319 Mich 42, where this Court held that only when the mother is not of a good moral character, or where conditions exist in her home which would make it unfit for the child, may the Court well ignore the provisions of the statute and give the father custody of a child under 12.

We conclude from the evidence introduced that the mother in the instant case is now a competent person, prepared to give the child the mother's love that such a young child so badly needs. Certainly, the mother's actions indicate she is of good moral character and the home she is prepared to provide is one in which the child will be well cared for and in which she will find the happy environment to which she is entitled. The record discloses nothing with respect to the mother's actions, the proposed home, or the relationship between mother and child that the courts could construe to be detrimental to the "best interests of the child."

That the child has been well cared for in the home of the grandparents cannot be questioned, but the mother's home surroundings are now favorably established and she is desirous of rearing her daughter in her own home. It would serve no purpose to recite in greater detail the testimony offered in behalf of the respective parties. The mother is legally entitled to the custody of her 4-year-old child. This, we believe, is amply supported in the record submitted to us.

The decree is reversed only insofar as custody of the minor child is concerned, and the case is remanded for entry of an order or orders in keeping with and for the purpose of carrying out this opinion. In view of the preceding history, however, the order should be subject to review by the circuit judge 6 months from date as to the adjustment of the child in the new home. Defendant shall have costs.

DETHMERS, C. J., and KELLY, EDWARDS, and SOURIS, JJ., concurred with KAVANAGH, J.

CARR and SMITH, JJ., did not sit.