*In re* SEENEY.

1. PARENT AND CHILD—CUSTODY OF CHILD.
   The natural parents of a minor child would ordinarily have a right to the custody of the child.

2. SAME—CUSTODY OF CHILD BORN OUT OF WEDLOCK—EVIDENCE.
   Best interests of 6-year-old boy were properly found by the trial judge in habeas corpus proceeding to have been served by leaving his custody with defendants, an honest, hard-working, otherwise childless couple, who had cared for him since he was 7 weeks old and who had treated him with care and kindness, where natural parents were not married until after father had obtained a divorce from his previous wife, father had paid $15 for the boy's care for only about 3 months and sent gifts occasionally, but mother never sent any gifts and visited the child rarely.

3. SAME—CUSTODY—PRESUMPTIONS—EVIDENCE.
   It is usually presumed that it is to the best interests of a 6-year-old child to be with its mother, but when the circumstances clearly indicate that this is not true, the parents have no absolute right to the custody of the child.

4. HABEAS CORPUS—REHEARING—AVAILABILITY OF TESTIMONY.
   Rehearing in habeas corpus proceeding to recover custody of 6-year-old boy on ground that petitioners' testimony was not available at time of original hearing was properly denied, in view of fact that they successfully opposed defendants' request for more time to prepare their case and knew their own testimony was not then available.

Appeal from Wayne; Webster (Arthur ), J. Submitted January 3, 1951. (Docket No. 34, Calendar No. 44,682.) Writ dismissed March 1, 1951.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 39 Am Jur, Parent and Child, §§ 10, 20.
[4] 25 Am Jur, Habeas Corpus, § 158.

Habeas corpus by William Seeney and wife against Fred Davey and wife to obtain custody of William Bryon Seeney. Writ dismissed. Plaintiffs appeal. Affirmed.

*Robert D. Anspach,* for plaintiffs.

*Michael A. Guest,* for defendants.

BUTZEL, J.  William and Anne Seeney appeal from a denial of their petition for a writ of habeas corpus to obtain custody and control of a boy, William Bryon Seeney, who they claim is unlawfully held and detained by Fred and Wanda Davey, defendants. The hearing was held in April of 1949 at which time the boy was almost 6 years old.  Anne Seeney was not at the hearing, being sick at the time.  The trial judge held that in view of all the circumstances, and the actions and character of the parties, the interests of the child would best be served by allowing him to remain with the defendants.  The testimony is very much in conflict, but we are impressed with the findings of the trial judge who saw and heard the witnesses and examined all of the facts most carefully.

The petitioners, as the natural parents of the boy, ordinarily would have a right to his custody.  However a brief recitation of the facts will show that the trial court came to the correct conclusion.

The child was born out of wedlock.  At the time of the illicit relationship Anne Seeney, the mother, was divorced and unmarried, and William Seeney, then the putative father, was legally married to another woman, from whom he subsequently obtained a divorce.  The petitioners were married about 1 year after the child was born.  The trial judge commented upon the fact that Seeney would never have received a divorce if the illicit relationship with

the woman he subsequently married had been known. His previous conduct discloses the unfitness of his character.

When the child was born Mr. Seeney placed him with a Mrs. McDonald who agreed to care for him. She kept the child for 7 weeks, but after that time was unable to keep him. Mr. Seeney then found that the Daveys would be willing to care for the child. Mr. Seeney paid Mrs. Davey $15 a week. After 3 months under this arrangement, Mr. Seeney told the Daveys that he was going to place the child with his sister. Mr. Seeney took the child, but his sister was unable to keep him. Mr. Seeney called the Daveys on the day he took the child, and said, "Come and get your child." Except for that 1 day, the Daveys have had continuous custody of the child since he was 7 weeks old. Seeney claimed that when his plan to place the child with his sister failed, he paid $150 to the Daveys and continued to pay $15 each week for about a year. Mrs. Davey testified that she returned the $150 and that Seeney has never made a payment since. Mr. Seeney had no receipts or cancelled checks and the trial judge, after listening to the parties, found that no payments had been made.

About 1 month after the baby had been returned, Mrs. Davey received a note from Anne Seeney in which she said that she wanted Mrs. Davey to have the baby. This note was lost, but a neighbor saw the note, and corroborated Mrs. Davey's testimony on this point. The note is important, for at the time of its sending Mr. and Mrs. Seeney were not yet married, and Mrs. Seeney had sole right to custody of the child.

Mrs. Seeney has shown a complete lack of interest in the child. It was Mr. Seeney who saw to his placement, and who tried to keep him with Mr. Seeney's sister. Mrs. Seeney has visited the

child rarely and has never shown the usual mother's interest. Mrs. Davey testified that while Mr. Seeney occasionally sent gifts, Mrs. Seeney never sent any, and it was Mr. Seeney's objections that prevented prior adoption proceedings by the Daveys from being completed.

In contrast, the Daveys have treated the boy with care and kindness. They have no other children as a result of their marriage, and Mrs. Davey has considered and treated the boy as her own son. Mr. Davey has been a member of the Detroit police force for almost 25 years, and all the testimony indicates that they are a hard-working, honest couple.

The petitioners claim that as the natural parents of the boy they are entitled to his custody. It is usually presumed that it is to the best interests of the child to be with its mother, but when the circumstances clearly indicate that this is not true the parents have no absolute right to the custody of their child. *Brown* v. *DeWitt,* 320 Mich 156; *In re Gould,* 174 Mich 663.

It is also claimed that the court erred in refusing to grant a motion for a rehearing. In Anne Seeney's affidavit in support thereof she stated that she had been too sick and nervous to testify at the trial; that she had never sent the note as claimed by Mrs. Davey; that she had sent gifts to the child; that the only reason she had left the child with Mrs. Davey was because Mrs. Davey represented that she wanted gradually to acclimate the child to the change to his real mother. A supporting affidavit was introduced by Mrs. Seeney's physician, in which he corroborated Mrs. Seeney's statement that she was too sick to come to the trial.

When the hearing began, the defendants asked for more time to prepare their case. The petitioners, knowing that Mrs. Seeney was not going to testify, insisted that the hearing proceed. The theory upon

which the request for rehearing was based was that the testimony was not available at the time of the trial, and that it was material to the determination of the cause. In view of the petitioners' insistence on going ahead, their request has very little merit. However, the welfare of the child is our sole consideration and we will not base our decision upon this technical ground. The Seeneys by their own admission have contributed nothing to the support of the child for almost 5 years and have visited him only on rare occasions during that period. To a large extent they have abandoned him. The child has grown up in the care of the Daveys and regards them as his parents. The interests of the boy would not be served by a change in custody at this late date.

The order of the trial court is affirmed. Costs to the appellees.

REID, C. J., and BOYLES, NORTH, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred.